IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JASON KNIGHT, et al., | ) |
|     Plaintiffs, | ) |
| | ) NO. 3:19-cv-00710 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| MONTGOMERY COUNTY, TENNESSEE, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Pending before the Court is Defendant Montgomery County, Tennessee's Motion to Dismiss (Doc. No. 16, the "Motion"), supported by an accompanying brief (Doc. No. 17). Plaintiffs Jason D. Knight, David Webb, and Joshua Wikholm filed a response (Doc. No. 20), and Defendant replied (Doc. No. 21). For the below-stated reasons, the Motion will be granted in part and denied in part.

### ALLEGED FACTS[1]

Plaintiffs engage in "livestreaming" meetings of the Montgomery County Commission ("the Commission") from their individual electronic devices to their individual social media accounts. (Doc. No. 15 at ¶ 23). Livestreaming is the "transmission of live video and audio coverage of an event over the internet using social medial platforms." (*Id*. at ¶ 7). During a livestream, fellow social media users may comment or "react" to the video feed and those comments and reactions are shared with the other viewers of the livestream as the livestream continues. (*Id*. at ¶ 8).

---

[1] The cited facts are alleged in the Amended Complaint and accepted as true for purposes of the instant motion to dismiss.

Plaintiff Webb is a "disabled veteran whose physical limitations impair his ability to attend Montgomery County Commission meetings in person." (*Id.* at ¶ 5). Thus, Plaintiff Webb views the livestreams of the Commission meetings from his home. (*Id.*). Plaintiff Knight is an elected Montgomery County Commissioner who livestreamed Commission meetings. Plaintiff Knight also hosts live streams (of public meetings and other events) and actively participates, comments, and engages with the audience of his streams. (*Id.* at ¶ 4). Plaintiff Wikholm is a "disabled veteran whose sole employment is the livestreaming of government meetings." (*Id.* at ¶ 6).

During a commission meeting on August 12, 2019, a committee member presented Resolution 19-8-3 ("the Resolution") to the Commission for consideration. (*Id.* at ¶ 24). Section 7 of the Resolution states:

> No live broadcast from within the Commission Chambers of its proceedings in whole or in part is allowed. A simultaneous broadcast of the proceedings is available on the internet at "YouTube" and the same is preserved there for an extended period.

(*Id.* at ¶ 25). The commissioners supportive of the Resolution stated that the Resolution alleviated concerns of safety and disruptions during Commission meetings. (*Id.* at ¶ 26). The Commission rejected an amendment proposed by Plaintiff Knight that would allow for livestreaming of commission meetings with 48-hours' notice to the commission, and it passed the Resolution as written by a vote of twenty to one. (*Id.* at ¶¶ 27, 30).

Plaintiffs contend that the Resolution's restriction on livestreaming the Commission meetings violates their rights guaranteed by the First Amendment to the United States Constitution and Section 1, Article 19 of the Tennessee Constitution. (Doc. No. 15 at ¶¶ 36-44, 50-55). Plaintiffs also contend that the Resolution violates their Fourteenth Amendment right to equal protection under the laws because they claim that the Resolution treats individuals who wish to livestream differently than individuals who wish to record the meetings for later broadcast. (*Id.* at ¶¶ 45-49).

2

## LEGAL STANDARD

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true as the Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The

question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

## ANALYSIS

### I. Count One: Violation of the First Amendment Right to Freedom of Expression

Pursuant to 42 U.S.C. § 1983, Plaintiffs seek to vindicate an alleged right under the First Amendment to livestream the Montgomery County City Council meetings. Under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

"[M]unicipalities and other local government units . . . [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) Counties are also persons for purposes of § 1983. *See Miranda v. Clark Cnty., Nev.*, 319 F.3d 465, 469 (9th Cir. 2003) (en banc).

"In order to prevail on a § 1983 claim, [the] [p]laintiffs must demonstrate that [the] [d]efendant[s] deprived them of their 'rights, privileges, or immunities secured by the Constitution' under color of state law." *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007) (quoting 42 U.S.C. § 1983).[2] Therefore, the initial question in considering Plaintiffs' § 1983 claim is whether they were deprived of a right secured by the U.S. Constitution. However,

---

[2] For a (non-immune) governmental entity to be liable under 42 U.S.C. § 1983, it must be the "moving force behind the deprivation," such that the "entity's policy or custom . . . played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal quotation marks omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). A policy "promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies *Monell*'s policy requirement." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), overruled on other grounds by *Bull v. City & Cty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc).

4

to be deprived of such right, in light of how Plaintiffs stated their claim, Plaintiffs must have been engaging in activity protected by the Free Speech clause of the First Amendment.

### A. Defendant's Position

Defendant argues that the Resolution does not restrict any activity protected by the First Amendment, "because 'prohibitions on videotaping public meetings do not violate the First Amendment' and Resolution 19-8-3 does not restrict the ability to post comments on social media websites[.]" (Doc. No. 17 at 3 (citing *Carlow v. Mruk*, 425 F. Supp. 2d 225, 247-48 (D.R.I. 2006)). Defendant cites *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177 (3d Cir. 1999), wherein the Third Circuit explained that the municipality's act of preventing the plaintiff from videotaping a planning commission meeting did not "interfere[] with [the plaintiff's] speech or other expressive activity" because the act of recording a government meeting was not expressive activity. (*Id.* (citing *Whiteland Woods*, 193 F.3d at 183)). Defendant argues that here, Plaintiffs act of livestreaming does not qualify as expressive activity.

Further, Defendant points out that the Resolution does not prohibit, preclude, or restrict speech on a social media website, and "Plaintiffs and any other individuals are permitted to actively comment on social media during the meeting in real time." (*Id.* at 7). Moreover, Defendant points out that the Resolution does not prohibit Plaintiffs from recording meetings for subsequent streaming on their own social media sites where comments and discussion can occur. (*Id.*). Accordingly, Defendant maintains that the Amended Complaint fails to state a claim because "Resolution 19-8-3's prohibition on livestreaming the public Commission meetings does not violate the First Amendment." (*Id.* at 6). Even if it did, Defendant argues, the livestream ban still is not violative of the First Amendment because it is a content-neutral regulation with adequate alternatives for communication of information. (*Id.* at 8).

5

### B. Plaintiffs' Position

In response, Plaintiffs contend that the cases on which Defendant relies are distinguishable from the case at hand because the cases Defendant cites involve only recording of government meetings and do not involve "livestreaming of government meetings which include by its very nature an expressive element that mere recording does not." (Doc. No. 20 at 6). According to Plaintiffs, "the cases upon which the Defendant relies [each] reached its holding by reasoning that videotaping is more about the right of access to public meetings than it is the right of expression" and right-of-access principles are inapplicable to livestreaming. (*Id*. at 4-5). Plaintiffs contend that their First Amendment claim is based on expression, not access, because "Plaintiffs' injury stems from both the inability to livestream committee meetings and the inability to engage in political commentary with their own social networks about the contents of those meetings in real time, using the unique communicative features and tools available on platforms including Facebook and YouTube." (*Id*. at 6).

Additionally, Plaintiffs argue that although "neither the Sixth Circuit nor the Supreme Court have specifically defined livestreaming on social media as speech activity falling under the protection of the First Amendment," the Supreme Court "has stressed the importance of social medial as the modern public square." (*Id*. at 7 (citing *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017))). Accordingly, Plaintiffs assert that the allegations in their Amended Complaint demonstrate that their "right to livestream county commission meetings to their social media accounts is speech and is this protected by the First Amendment" and that they have plead that the Resolution is not narrowly tailored to serve a significant governmental interest. (*Id*. at 8).

**C. Is Livestreaming Speech?**

Neither the Sixth Circuit nor the Supreme Court has taken up the issue of whether livestreaming on social media qualifies as a form of expression that is protected by the First Amendment. (*Id*. at 6-7). And the Court's independent research indicates that no federal court has yet to decide this issue. Thus, before the Court is a matter of first impressions—is livestreaming on Facebook expressive conduct that qualifies as speech?

Defendant compares livestreaming to the act of video recording. Whether video recording is expressive conduct is itself a question that is debated among courts. "While the Supreme Court has held that motion pictures fall within the scope of the First Amendment, *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952), the Court has not definitively addressed whether recording itself is protected speech." *People for Ethical Treatment of Animals, Inc. v. Stein*, No. 1:16CV25, --- F. Supp. 3d.---, 2020 WL 2020 WL 3130158, at *8 (M.D. N.C. June 12, 2020). Numerous courts have held that video recording is not (and thus is not protected as) speech but rather is protected by the First Amendment through a right-of-access theory. In *Whiteland Woods*, on which Defendant relies, the plaintiff claimed a First Amendment right to videotape a meeting of a Township Planning Commission. The court held that under the extant circumstances in that case, no First Amendment right to videotape existed. 193 F.3d at 185. It noted that interested parties and the public were allowed to take notes, use audio recording devices, and even engage stenographers. The Court observed:

> Nothing in the record suggests videotaping would have provided a uniquely valuable source of information about Planning Commission meetings. The First Amendment does not require states to accommodate every potential method of recording its proceedings, particularly where the public is granted alternative means of compiling a comprehensive record.

*Id*. at 183.

7

Additionally, in *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 559 (6th Cir. 2007), the Sixth Circuit discussed the right to video record as being protected by the First Amendment through a right-of-access theory, rather than a freedom-of-expression theory. The court explained that "[a]lthough access cases are rooted in First Amendment principles, they have developed along distinctly different lines than have freedom of expression cases." *Id.* And in *McKay v. Federspiel*, No. 14-CV-10252, 2014 WL 1400091 (E.D. Mich. Apr. 10, 2014), the district court relied on *S.H.A.R.K.* to reject the plaintiffs' argument that video recording was expression. The court explained

> Both McKay and Defendant frame McKay's alleged right to record as raising a constitutional issue of freedom of expression. Reply 11–12 ("The First Amendment enshrines this right to record as a medium of expression commonly used for the preservation and communication of information and ideas...."). The Sixth Circuit has clarified, however, that a member of the public's right to record involves the First Amendment right to access information, not freedom of expression. *See S.H.A.R.K.*[, 499 F.3d at 559].

*McKay*, 2014 WL 1400091, at *10. Another district court in this circuit, although not citing *S.H.A.R.K.*, rejected plaintiffs' claim that their First Amendment rights were violated when a city commissioner removed a video camera from a city council meeting. *Maple Heights News v. Lansky*, No. 1:15CV53, 2017 WL 951426, at *3 (N.D. Ohio Mar. 10, 2017). The court analyzed the First Amendment claim under right-of-access principles and explained that the plaintiffs "failed to demonstrate any deprivation of their First Amendment rights, by virtue of [the commissioner's] removal of their video camera from the Maple Heights City Council Meeting" because the plaintiffs "'failed to demonstrate an essential nexus between the right of access and a right to videotape.'" *Id*. (quoting *Whiteland*, 193 F.3d at 183); *see also Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017) (rejecting the district court's characterization of

8

recording as expressive activity and explaining that "recording police activity in public falls squarely within the First Amendment right of access to information.").

However, nationwide, there is a growing trend of courts adopting the view that video recording is indeed speech for First Amendment purposes. Several courts have recognized recording as either expressive conduct warranting First Amendment protection, *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203-04 (9th Cir. 2018) (finding the creation of an audiovisual recording to be speech because "[t]he act of recording is itself an inherently expressive activity"), or conduct essentially preparatory to speech, *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (emphasis in original) ("The act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech . . . as a corollary of the right to disseminate the resulting recording."); *see also Animal Legal Def. Fund v. Herbert*, 263 F.Supp.3d 1193, 1198 (D. Utah 2017) (examining cases and noting that "it appears the consensus among courts is that the act of recording is protectable First Amendment speech.").

Additionally, the Sixth Circuit recently examined a First Amendment challenge to a state court local rule (numbered 33(D)(6)) prohibiting video recording in certain areas of the courthouse.[3] *See Enoch v. Hamilton Cty. Sheriff's Office*, No. 19-3428, --F. App'x--, 2020 WL 3100192 (6th Cir. June 11, 2020). In *Enoch*, the court did not delve into an analysis of whether the

---

[3] Local Rule 33(D)(6) did not specifically address livestreaming. But it is noteworthy that a state court judge previously had relied on that local rule to prohibit livestreaming by issuing the following order:

> No one, other than court staff and security, will be permitted to use electronic devices such as cell phones, tablets, laptops, recording devices, and hand held devices for taking photos, making video recordings, or conducting livestreaming such as Periscope or Facebook Live in any hallway on the fifth floor.

*Enoch v. Hamilton Cty. Sheriff's Office*, No. 1:16-CV-661, 2017 WL 2210515, at *9 n.7 (S.D. Ohio May 18, 2017), *aff'd and remanded sub nom. Enoch v. Hogan*, 728 F. App'x 448 (6th Cir. 2018).

restriction on recording interfered with either expressive conduct or the public's right of access. However, the court did indicate that the local rule implicated speech concerns and thus be subject to a forum analysis, then stated that "[n]o one denies that Rule 33(D)(6) is a reasonable restriction on speech."[4] *Id. at* \*5 (6th Cir. June 11, 2020). Thus, the Sixth Circuit appeared here to depart from its holding in *S.H.A.R.K.* that the right to record is within the ambit of right-to-access cases. But because the apparent departure was arguably dicta, was made without analysis or explanation, and occurred in an unpublished (and thus non-precedential) case, the Court at this stage can say only that it remains unclear whether the Sixth Circuit views video recording as expressive conduct constituting speech.

But in any event, Plaintiffs allege that the Resolution regulates not mere *video recording*, but rather *livestreaming*. Plaintiffs have pled that livestreaming is distinct from video recording due to its communicative nature on social media. In resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the (non-conclusory) factual allegations in the Amended Complaint as true and in a light most favorable to Plaintiffs. Viewing the non-conclusory factual allegations in this manner as required, the Court finds that they plausibly suggest that livestreaming is expressive conduct.[5] Irrespective of whether mere general video recording constitutes expressive

---

[4] Below, the Court describes the nature of a "forum analysis" and discusses the forum analysis in the current procedural posture, *i.e.,* a motion to dismiss stage under Rule 12(b)(6).

[5] Whether activity qualifies as expressive conduct is a question of law. *See Ruff v. Long*, 111 F. Supp. 3d 639, 645 (E.D. Pa. 2015) ("Ruff's behavior is only afforded First Amendment protection if we construe it as expressive conduct. This is a threshold question of law."). As suggested above, the Court concludes Plaintiffs have made (non-conclusory) factual allegations regarding the nature of livestreaming that, if true, plausibly suggest an affirmative answer to the (legal) question of whether livestreaming constitutes expressive conduct. This conclusion does not mean that the Court has determined, or necessarily will determine, that the livestreaming at issue actually is expressive conduct as a matter of law; any such determination would depend upon, among other things, evidence as to what the livestreaming in this case actually entails. Consistent with the Court's limited function on a 12(b)(6) motion to dismiss, the Court is merely deciding that Plaintiffs' Amended Complaint includes factual allegations sufficient to state a claim that survives Defendant's motion to dismiss. The ultimate merit of Plaintiff's claim remains to be determined, *See Brown v. Gov. of Dist. of Columbia*, 390 F. Supp. 3d at 114, 123 (D.D.C. 2019) ("Thus, courts typically do not reach

10

conduct, Plaintiffs detailed allegations involving the "communicative medium" of livestreaming suggest (at least plausibly), for purposes of the Motion,[6] that livestreaming qualifies as expressive conduct. Thus, the Court will proceed with the appropriate forum analysis, *i.e.*, will determine whether the Amended Complaint sufficiently alleges that the Resolution is not a reasonable time, place, and manner restriction.

### D. Is the Resolution a Reasonable Time, Place, and Manner Restriction?

In determining whether a limitation on speech is permissible under the First Amendment, courts apply a "forum analysis." *Tucker v. City of Fairfield*, 398 F.3d 457, 463 (6th Cir. 2005). "When the government designates a limited public forum for speech, as [in] the case of a city council meeting, it may apply restrictions to the time, place, and manner of speech so long as those restrictions 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Youkhanna v. City of Sterling Heights*, 332 F. Supp. 3d 1058, 1069 (E.D. Mich. 2018), *aff'd*, 934 F.3d 508 (6th Cir. 2019) (quoting *Jobe v. City of Catlettsburg*, 409 F.3d 261, 266 (6th Cir. 2005)). "'[T]he requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation,' and does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Tucker*, 398 F.3d at 463 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). "[T]he regulation's

---

the merits of a First Amendment challenge at the motion-to-dismiss stage." (citing *Boardley v. U.S. Dep't of the Interior*, 615 F.3d 508, 519–25 (D.C. Cir. 2010))).

[6] As emphasized herein, at the motion-to-dismiss stage the Court must take the Amended Complaint's (non-conclusory) factual allegations as true. Of course, at later stages in this action, including any future motion for summary judgment, the Court will not be confined to the Rule 12(b)(6) standard. Nor was the Court confined to the Rule 12(b)(6) standard in its Order denying Plaintiffs' request for a Temporary Restraining Order, in which the Court found (among other things) that a restriction on livestreaming is akin to a restriction on video recording—the protection for which the Sixth Circuit (until earlier this month, when it issued *Enoch*), had evaluated under a right-of-access rather than an expressive-conduct theory. *See S.H.A.R.K.*, 499 F.3d at 559.

defender, not the challenger, bears the burden on the issue of narrow tailoring." *Timmon v. Wood*, 316 F. App'x 364, 365 (6th Cir. 2007) (citing *Horton v. City of Houston*, 179 F.3d 188, 194 (5th Cir. 1999)).

Defendant essentially asks the Court to make a factual finding that its regulation was narrowly tailored to serve a significant government interest, namely "the safety of the public and more particularly those individuals attending the meeting." (Doc. No. 17 at 9). But the Court cannot do so at this juncture. "In determining the sufficiency of the pleadings, the factual question of whether any regulation of [the plaintiff's] First Amendment right was content-neutral and reasonable in time, place, and manner is not reached." *Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 832 F. Supp. 2d 940, 947 (N.D. Ill. 2011); *see also Case v. City of New York*, 233 F. Supp. 3d 372, 394 (S.D.N.Y. 2017) ("the Court cannot conclude, based on the allegations in the complaint and without further factual development, that the requirements of "narrow tailoring" and "ample alternative channels of communication" were met."); *Henry v. City of Cincinnati, Ohio*, No. C-1-03-509, 2005 WL 1198814, at *9 (S.D. Ohio Apr. 28, 2005) ("To begin, without affording the parties an opportunity to present evidence, the Court cannot properly determine if the time, place, and manner restrictions of Section 910-12 (1) are narrowly tailored to serve significant government interests, (2) do not burden substantially more speech than is necessary to further the government's significant interests, and (3) leave open ample alternative channels of communication.").

At this juncture, the Court instead asks only whether Plaintiffs have adequately alleged that the Resolution fails the forum analysis. The Court finds that they have, in light of the Amended Complaint's allegations (which the Court at this stage must accept as true) that : (1) "[n]o specific, articulable safety concerns justifying [the Resolution] exist"; and (2) "[n]o plausible explanation

[as to why a less restrictive resolution would not adequately address the safety concerns allegedly underlying the Resolution] was provided by proponents of the resolution." (Doc. No. 15 at ¶ 28-29). Accordingly, Plaintiffs have adequately pled that the Resolution is not a reasonable time, place, and manner restriction—and the Court cannot conclude otherwise at the motion-to-dismiss stage. Thus, Plaintiff's First Amendment claim will not be dismissed.

## II. Count Two: Violation of the Fourteenth Amendment Right to Equal Protection

In Plaintiffs' response to the Motion, Plaintiffs "concede that the Equal Protection claims raised in the Amended Complaint are not viable and should be dismissed." (Doc. No. 20 at 13). Accordingly, Plaintiffs' Equal Protection claim will be dismissed.

## III. Count Three: Violation of Article I, Section 19 of the Tennessee Constitution

Plaintiffs seek a declaratory judgment that the Resolution violates Article I, Section 19 of the Tennessee Constitution.[7] The Tennessee Supreme Court explained that

> The First Amendment to the United States Constitution prohibits any law "abridging the freedom of speech," U.S. Const. amend. I, while the Tennessee Constitution acknowledges that "[t]he free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty." Tenn. Const. art. I, § 19. The Tennessee provision has been "construed to have a scope at least as broad as that afforded" the freedoms of speech and of the press by the First Amendment. *Leech v. Am. Booksellers Assoc.*, 582 S.W.2d 738, 745 (Tenn. 1979).

*State v. Mitchell*, 343 S.W.3d 381, 392 n.3 (Tenn. 2011). *See also State v. Goldberg*, No. M201702215CCAR3CD, 2019 WL 1304109, at *15 (Tenn. Crim. App. Mar. 20, 2019) ("The free speech protections of the Tennessee Constitution have been interpreted to be at least as broad as

---

[7] Plaintiffs do not also seek damages under this theory. And indeed there is no private right of action for damages grounded directly upon a violation of the Tennessee Constitution. *See Siler v. Scott*, 591 S.W.3d 84, 102 (Tenn. Ct. App. 2019); *Cline v. Rogers*, 87 F.3d 176, 179–80 (6th Cir. 1996); *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999).

the First Amendment.") (citing *Mitchell*, 343 S.W.3d at 392 n.3), *appeal denied* (Dec. 5, 2019). Because the Tennessee Constitution provides speech protections that are *at least* as broad as those protections afforded by the First Amendment, Plaintiffs' Tennessee constitutional claim survives for the same reasons articulated above in the Court's First Amendment analysis.[8]

## CONCLUSION

For the above-mentioned reasons, Defendant's Motion to Dismiss (Doc. No. 16) will be **GRANTED** in part and **DENIED** in part. Plaintiffs' Equal Protection Claim (Count Two) will be dismissed. Plaintiffs' remaining claims survive.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[8] Defendant itself opines that the analysis for the claim under the Tennessee Constitution should be the same as the analysis for the claim under the First Amendment. (Doc. No. 17 at 5 n.1).