IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JASON KNIGHT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 3:19-cv-00710 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| MONTGOMERY COUNTY, | ) | |
| TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Plaintiff Jason Knight is an elected Montgomery County Commissioner. During the Montgomery County Commission meetings, Plaintiff Knight used Facebook's "livestream" feature to livestream (*i.e.*, broadcast in real time) the Commission meetings on his Facebook page. Allegedly in response to such action, the Commission adopted Resolution 19-8-3 that forbade "live broadcast" from within the Commission Chambers. Plaintiff Knight (and other Plaintiffs who livestream and view the livestream of the Commission meetings) filed this lawsuit contending that the Resolution violated their right to free speech under the United States and Tennessee constitutions.

Now pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 40, "Defendant's Motion"), supported by an accompanying brief (Doc. No. 42). Plaintiffs filed a response (Doc. No. 50), and Defendant filed a reply (Doc. No. 55). Also pending before the Court is Plaintiffs' Motion for Summary Judgment (Doc. No. 44 "Plaintiffs' Motion"), supported by an accompanying brief (Doc. No. 45). Defendant filed a response (Doc. No. 49), and Plaintiffs filed a reply (Doc. No. 54).

For the reasons stated below, Defendant's Motion will be granted and Plaintiffs' Motion will be denied.

## FACTUAL BACKGROUND[1]

Plaintiff Jason Knight is a Montgomery County Commissioner who used his Facebook page to livestream Commission meetings. (Doc. No. 48 at ¶¶ 1-3). Plaintiff Knight also "conduct[ed] a 'live break down [sic] [on Facebook or other social media outlets] of each commission meeting after the [ ] meeting.'" (Doc. No. 51 at ¶ 10). Beginning in 2018, Plaintiff Knight hired Plaintiff Wikholm to livestream Commission meetings to Plaintiff Knight's Facebook page. (Doc. No. 48 at ¶ 7). Plaintiff Wikholm used one electronic device to livestream the meetings and a second electronic device to respond to the comments[2] on the livestream. (*Id*. at ¶¶ 8-9). Plaintiff Webb is a disabled veteran "whose physical limitations impair his ability to attend [ ] Commission [m]eetings in person." (*Id*. at ¶ 15). Plaintiff Webb watched Commission meetings via Plaintiff Knight's Facebook page livestream. (*Id*. at ¶ 16).

During a commission meeting on August 12, 2019, the Commission adopted Resolution 19-8-3 ("the Resolution") by a vote of twenty to one. (Doc. No. 48 at ¶ 21; Doc. No 51 at ¶ 6). Section 7 of the Resolution states:

> No live broadcast from within the Commission Chambers of its proceedings in whole or in part is allowed. A simultaneous broadcast of the proceedings is available on the internet at "YouTube" and the same is preserved there for an extended period.

---

[1] The following facts, unless somehow qualified herein (as for example by "[deponent] testified that . . ."), are taken as true for purposes of this motion, because they are either: (1) asserted and evidentially supported by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by the non-movant and thus credited by this Court even if disputed by the movant; or (4) subject to judicial notice. All testimony referred to herein is deposition testimony.

[2] Once a livestream broadcast is initiated on Facebook, users are able to "comment" on the livestream. *See Live Comments*, Facebook, https://www.facebook.com/business/help/2661398657407223?id=1123223941353904 (last accessed March 15, 2022).

(Doc. No. 48 at ¶ 22). Plaintiff Knight voted in favor of the Resolution. (Doc. No. 51 at ¶ 8).

Commission meetings are held in a room called the Commission Chambers on the third floor of the historic Courthouse in Clarksville, Tennessee. (Doc. No. 48 at ¶ 23). There is one main public entrance controlled by armed guards, which involved passing through a metal detector and placing items on an inspection belt. (Doc. No. 51 at ¶ 2). In the Commission Chambers, there are four operational cameras with audio, which are used to generate the Commission's broadcast of the Commission proceedings that is uploaded to Montgomery County's YouTube page where viewers are able to add "comments" on the proceedings. (Doc. No. 48 at ¶ 27). Montgomery County's YouTube page is operated by Montgomery County's IT director, who has the ability to remove comments from the YouTube page. (*Id*. at ¶ 29). Montgomery County's YouTube channel is set to YouTube's default setting of "hold[ing] potentially inappropriate comments for review." (*Id*. at ¶ 31). The IT director reviews and approves (or disapproves) of comments that have been held as potentially inappropriate. (*Id*. at ¶¶ 31-32). For example, during the January 11, 2021 broadcast, the word "idiots" triggered the 'potentially inappropriate' hold, and the IT director did not override the comment to allow for publishing. (*Id*. at ¶¶ 33-34). The broadcast of the Commission meetings on YouTube is delayed so that it is not a "livestream" recording. (*Id*. at ¶ 30).

Photography and video recording are allowed during Commission meetings but must be done in a designated area of the Chambers to prevent potential security threats like an active-shooter situation. (Doc. No. 48 at ¶¶ 37-38; Doc, No. 51 at ¶¶ 9, 21).

Plaintiffs contend that the Resolution's restriction on livestreaming the Commission meetings violates their rights guaranteed by the First Amendment to the United States Constitution

(Count I) and Article 1, Section 19 of the Tennessee Constitution (Count II).[3] (Doc. No. 15 at ¶¶ 36-44, 50-55). As noted above, the parties have filed cross-motions for summary judgment, each contending that the undisputed facts demonstrate that they should prevail as a matter of law. As noted above, responses and replies to the respective cross-motions have been filed. Accordingly, this matter is now ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian*

---

[3] In Plaintiffs' first Complaint, Plaintiffs asserted that the Resolution violated their rights under the Equal Protection Clause. (Doc. No. 1). The Court dismissed that count when ruling on Defendant's Motion to Dismiss. (Doc. No. 26).

*Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *New Century Found. v. Robertson*, 400 F. Supp. 3d 684, 689 (M.D. Tenn. 2019) (citing *Ferro Corp. v. Cookson Group, PLC*, 585 F.3d 946, 949 (6th Cir. 2009). "[S]ummary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion

on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). In addition, "if the moving party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997) (citing *Celotex Corp.*, 477 U.S. at 322-23); *see also Ely v. Dearborn Heights School Dist. No. 7*, 150 F. Supp. 3d 842, 849-50 (E.D. Mich. 2015) (explaining that if the moving party bears the burden of proof at trial that party "must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial." (citing William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477–78 (1992))).

## ANALYSIS

### I. Count One: Violation of the First Amendment Right to Freedom of Expression

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. amend. I. "Free-speech claims require a three-step inquiry: first, [the Court] determine[s] whether the speech at issue is afforded constitutional protection; second, [the Court] examine[s] the nature of the forum where the speech was made; and third, [the Court] assess[es] whether the government's action in shutting off the speech was legitimate, in light of the applicable standard of review." *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015) (citing

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)). The Court will now proceed with such steps.[4]

---

[4] Although the Second Amended Complaint is not clear on this particular point, it appears that Plaintiffs are asserting an as-applied challenge to the Resolution. "In an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997) (quoting *Ada v. Guam Soc'y of Obstetricians and Gynecologists*, 506 U.S. 1011, 1012 (1992) (Scalia, J., dissenting)). By contrast, a plaintiff that challenges a law "on its face" attempts "to invalidate the law in each of its applications, to take the law off the books completely." *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 691 (6th Cir. 2015) (quoting *Speet v. Schuette*, 726 F.3d 867, 871 (6th Cir. 2013)). In the Second Amended Complaint, Plaintiffs seek a declaratory judgment "for violation of *the Plaintiffs'* First Amendment rights". (Doc. No. 32 at 1). *Accord id.* at 11 (requesting "[a] declaratory judgment that [Defendant] violat[ed] each "Plaintiffs' protected constitutional rights.")).

Although Plaintiffs assert in one section of its briefing that it is bringing a "facial overbreadth challenge," (Doc. No. 45 at 11) (stating without context that "Initiating a facial challenge against a statute's constitutionality under the First Amendment is an overbreadth challenge"), as discussed below a facial overbreadth claim was not pled in the Second Amended Complaint. However, the distinction of the lawsuit as "as-applied" or "facial" may be one without a difference, because the Supreme Court has emphasized that, "classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019); *see also Gross v. United States*, 771 F.3d 10, 14–15 (D.C. Cir. 2014) ("'[T]he substantive rule of law is the same for both [facial and as-applied] challenges'"); *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 228 (2d Cir. 2006) (the facial/as-applied distinction affects "the extent to which the invalidity of a statute need be demonstrated," not "the substantive rule of law to be used").

Thus, the Court will proceed with reviewing Plaintiffs' claim as if it is an an-applied challenge to the Resolution, but notes that even assuming Plaintiffs' claim was a facial challenge, it would fail for the same reasons discussed below. In the context of the First Amendment, "[t]he Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). Thus, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 n.6 (2008)).

As the undersigned has explained before:

So a facial challenge in the First Amendment context is (a) necessarily an overbreadth challenge and (b) easier to sustain than a facial challenge in other contexts in that it requires a showing only that the challenged statute will result in a "substantial number" of unconstitutional applications, not a showing that its application would be unconstitutional in every case. Despite facing a lower hurdle than a typical facial challenge, a challenge based on "[t]he overbreadth doctrine is 'strong medicine' that is used 'sparingly and only as a last resort.'" *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). The Sixth Circuit has additionally stated that courts in this Circuit "will not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Speet*, 726 F.3d at 878 (internal quotation marks and citation omitted). The plaintiff bears the burden of showing a court that substantial overbreadth exists. *Id*.

*1. Speech*

It is axiomatic that a threshold question the Court must ask when conducting a First Amendment analysis is whether the Regulation regulates "speech" within the meaning of the First Amendment such that it is protected by the First Amendment in the first place. Such "speech" can take the form of expressive conduct. *See Rumsfeld v. Forum for Acad. and Instit. Rights, Inc.*, 547 U.S. 47, 66 (2006) (explaining that certain kinds of conduct that is "inherently expressive" [also known as "expressive conduct"] is considered "speech" for First Amendment purposes).

As the Court noted in its opinion denying Defendant's Motion to Dismiss Plaintiffs' First Amendment claim, "[n]either the Sixth Circuit nor the Supreme Court has taken up the issue of whether livestreaming on social media qualifies as a form of expression [*i.e.*, "speech'] that is protected by the First Amendment." *Knight v. Montgomery Cty., Tenn.*, 470 F. Supp. 3d 760, 765 (M.D. Tenn. 2020). Although the Court issued that opinion nearly two years ago, there still has not been a clear answer from the Supreme Court or Sixth Circuit as to whether the act of livestreaming qualifies as speech. As far as the Court can tell, (at least outside of the context of livestreaming police interactions) virtually no federal court has taken up the issue of whether livestreaming is speech or expressive conduct, and thus protected by the First Amendment.

The Court need not decide at this time whether livestreaming is either speech. In Defendant's Motion, Defendant does not dispute that livestreaming is speech and instead places all of its eggs in the "Resolution does not regulate any speech in an unconstitutional manner" basket. Defendant, as (obviously) the moving party on Defendant's Motion, "must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine

---

*Doe #1 v. Lee*, 518 F. Supp. 3d. 1157, 1208-09 (M.D. Tenn. 2021) (Richardson, J.) Plaintiffs simply have not shown that a "substantial number" of applications of the Resolution are unconstitutional. *See Stevens*, 559 U.S. at 473. Accordingly, even assuming Plaintiffs have brought a facial overbreadth challenge to the Resolution, that claim fails.

dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial." *Ely*, 150 F. Supp. 3d at 849-50. Defendant has not met (or even tried to meet) the burden it would bear to demonstrate preliminarily that livestreaming would not be considered to be speech.[5]

In Plaintiffs' Motion, Plaintiffs argue that livestreaming is "speech" protected by the First Amendment, and they aptly note that whether livestreaming constitutes "speech" is an issue of first impression for the Court. (Doc. No. 45 at 5). But the Court need not address this issue at this time. Instead, the Court herein will assume *arguendo* (in Plaintiffs' favor) that livestreaming is either speech and thus protected by the First Amendment. Even making this assumption, however, the Court determines below that summary judgment for Plaintiffs is inappropriate and that summary judgment for Defendant is appropriate.

Accordingly, the Court will assume *arguendo* for the purpose of deciding each of the cross-motions that livestreaming is indeed either speech that is protected by the First Amendment.

*2. Nature of the Forum*

The applicable test to be applied when determining whether the Resolution is a constitutional regulation of expressive conduct varies depending on the forum where the speech occurred. *Christian Legal Soc'y Chapter of Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010).

There are four types of forums the Supreme Court has recognized for First Amendment purposes: nonpublic, public, designated public, and limited public. *Hartman v. Thompson*, 931 F.3d 471, 478 (6th Cir. 2019) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 469-70

---

[5] On the other side of the coin, Plaintiffs have also likely not met their burden on summary judgment to demonstrate that livestreaming *is* expressive conduct. Thus, Plaintiffs' Motion could be denied at this first step. However, the Court will assume in their favor that livestreaming is expressive conduct for purposes of deciding their Motion.

(2009)); *see also Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010). The forum analysis "is a mixed question of law and fact, as to which the answer is obtained by applying legal principles to facts." *Forbes v. Arkansas Educ. Television Comm'n*, 93 F.3d 497, 502 (8th Cir. 1996), *rev'd on other grounds*, 523 U.S. 666. The Sixth Circuit recently explained that a "City Council meeting is . . . [both] a 'designated' and 'limited' public forum: 'designated' because the government has 'intentionally open[ed] it for public discourse,' and 'limited' because 'the State is not required to . . . allow persons to engage in every type of speech' in the forum" *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 519 (6th Cir. 2019) (quoting *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009)).[6] Here, the Court takes judicial notice that the Montgomery County Commission is a meeting of elected officials to discuss county business, and therefore, is akin to a city council meeting. Further, the parties agree that a Commission meeting is a limited public forum. (*See* Doc. No. 43 at 8; Doc. No. 45 at 9).

Thus, the Court concludes that the undisputed facts demonstrate as a matter of law that a Montgomery County Commission meeting is a "designated" and "limited" public forum as described by the Sixth Circuit. *See Youkhanna*, 934 F.3d at 519. This conclusion applies to each of the cross-motions; that is, it applies when drawing all reasonable inferences from the undisputed facts in a light most favorable to the respective non-movants—*i.e.,* most favorable to Plaintiffs on Defendant's Motion, and most favorable to Defendant on Plaintiffs' Motion— as the Court must do on cross-motions for summary judgment.

---

[6] It is not entirely clear whether the Sixth Circuit here was essentially acknowledging a fifth type—a "designated and limited" public forum, which encompasses any forum that is simultaneously each of two of the four types recognized by the Supreme Court (*i.e.*, obviously, a designated public forum and a limited public forum) or was merely observing that a city council meeting simultaneously is of two types (again, obviously, a designated public forum and a limited public forum). There could be circumstances under which this would be a distinction with a difference. But the instant case does not present such a circumstance, because here the Court need only acknowledge the applicable test (set forth below) for what the Sixth Circuit calls a "designated" and "limited" public forum—a test that applies irrespective of whether this is a fifth type of forum or merely a forum that is simultaneously both the third type (designated public forum) and fourth type (limited public forum).

### 3. Standard of Review in Light of Nature Forum

"When a forum is a '"designated' and 'limited' public forum . . . the government may regulate the time, place and manner of speech so long as the regulation is (1) 'content-neutral,' (2) 'narrowly tailored to serve a significant governmental interest' and (3) 'leave[s] open ample alternative channels for communication of the information.'" *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 (1984)). In such forums, the government may "regulate features of speech unrelated to its content" through "time, place, or manner" restrictions. *McCullen v. Coakley*, 573 U.S. 464, 477 (2014).[7]

---

[7] Conflicting case law exists in the Sixth Circuit as to the level of scrutiny to be applied to government restrictions on speech in designated and limited forums. In *Ison*, *Lowrey*, and *Jobe*, the Sixth Circuit explained that restrictions on speech in either designated or limited forums survive if they are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information. *See Ison*, 3 F.4th at 893 (reviewing speech regulation in a limited public forum); *Lowery*, 586 F.3d at 432 (reviewing speech regulation in a limited and designated public forum); *Jobe*, 409 F.3d at 266 (reviewing speech regulation in a designated forum). However, at other times, the Sixth Circuit has indicated that a lesser form of scrutiny is applicable to a designated or limited public forums. *See Youkhanna*, 934 F.3d at 519 (describing a city council meeting as a limited and designated public forum, and then analyzing whether the speech restriction was reasonable and viewpoint neutral); *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019) ("In a limited public forum . . . [t]he government may restrict speech so long as the restrictions are viewpoint neutral and 'reasonable in light of the purpose served by the forum.'" (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010) ("The government may restrict speech in a limited public forum as long as the restrictions do "not discriminate against speech on the basis of viewpoint" and are "reasonable in light of the purpose served by the forum." (citation omitted))). This confusion is not confined to the Sixth Circuit, as other circuits have reached opposite conclusions regarding the level of scrutiny to be applied to limited or designated public forums. *Compare Cogswell v. City of Seattle*, 347 F.3d 809, 817 (9th Cir. 2003) ("[T]here is no requirement that a restriction in a limited public forum be narrowly tailored [ ] for a restriction to be reasonable."), *with Rowe v. City of Cocoa, Fla*., 358 F.3d 800, 802–03 (11th Cir. 2004) ( holding that "city commission meetings are 'limited' public for a . . . [a]s such, 'the government may restrict access to limited public fora by content-neutral conditions for the time, place, and manner of access, all of which must be narrowly tailored to serve a significant government interest.'" (citation omitted)).

Considering this confusion, the Court proceeds primarily as if the more stringent standard of scrutiny is applicable. That is, the Court focuses its attention on whether Defendant prevails as a matter of law even under that standard. Additionally, the parties have apparently assumed such level of scrutiny applies, as they each analyze the Resolution under such standard. Nevertheless, the Court holds, alternatively, that because the Resolution is constitutional under an application of strict scrutiny, it would also survive under the lesser form of scrutiny that the Sixth Circuit sometimes invokes, because it is viewpoint neutral and reasonable for the reasons articulated throughout this opinion.

A. *Content Neutral*

The Resolution states that "[n]o live broadcast from within the Commission Chambers of its proceedings in whole or in part is allowed." (Doc. No. 48 at ¶ 22). Plaintiffs "concedes that [the Resolution] is content neutral." (Doc. No. 54 at 10). Thus, it is undisputed (and undisputable) that, for purposes of each party's cross motion, the Resolution is content-neutral.

B. *Narrowly Tailored to Serve a Significant Governmental Interest*

i. *Serves a Significant Governmental Interest*

In Defendant's Motion (and in response to Plaintiffs' Motion), Defendant asserts that the Resolution serves a significant governmental interest related to the security of the Commission meeting. (Doc. No. 40 at 3). The significant government interest to which Defendant points is safety of the Commission meetings. The Supreme Court has held that safety and security are compelling and significant state interests. *Cutter v. Wilkinson*, 544 U.S. 709, 709 (2005) (holding that safety and security are "undisputedly compelling and significant state interests."); *Schenck v. Pro-Choice Network of W. New York*, 519 U.S. 357, 376 (1997) (holding that ensuring public safety and order is a "significant" governmental interest); *see also Grider v. Abramson*, 180 F.3d 739, 749 (6th Cir. 1999) (noting the "significant public interests in the maintenance of public safety, security, and order"). In Plaintiffs' Motion (and in their response to Defendant's Motion), Plaintiffs do not (and could not successfully) contest the general principle that safety is a significant government interest. Instead, they argue that the Resolution does not *serve* Plaintiffs' interest in the safety of the Committee meetings because livestreaming does not pose a risk to safety during the Committee meetings. (Doc. No. 45 at 19; Doc. No. 50 at 11).

In arguing that the Resolution serves Defendant's interest in safety of the Committee meetings, Defendant cites the deposition testimony of Montgomery County Sheriff John Fuson,

who is tasked with providing adequate security for the Commission meetings and addressing security vulnerabilities therein. (Doc. No. 49 at 6). In his testimony, Sheriff Fuson described how livestreaming could create a security threat at Commission meetings by providing immediate and real time information to others outside of the Chamber regarding the positions of officers, doorways, and security points. (Doc. No. 41-1 at 35, 37, 44-46, 75). Montgomery County Chief Deputy Sheriff John Smith (Sheriff Fuson's second-in-command) in his deposition testimony described multiple scenarios where a livestream video could be used to form an attack on the Commission meeting, including determining when a target was at a particular location such as the podium or creating a diversion. (Doc. No. 41-5 at 36-43, 47-49). Further, Plaintiffs do not dispute that "[l]ive broadcasting allows an individual to show, in real time, the positioning of officers or security personnel, when and where their attention may be drawn away from one particular general security observation point to another based upon circumstance or a diversion, and can likewise transmit the presence of persons entering or exiting the [Commission] Chamber during the meeting." (Doc. No. 51 at ¶ 20). They also do not dispute that "[a]nyone wishing to commit an assault on the County Commission meeting could be aided by a real time live broadcast." (*Id*. at ¶ 21). Accordingly, Defendant has met its initial burden on its summary judgment motion to point to undisputed facts in the record that demonstrates preliminarily that the Resolution serves a significant government interest in safety.

In response (and in also their Motion), Plaintiffs rely on "the fact that a security assessment performed by Brian Grisham failed to implicate livestreaming as a viable security threat." (Doc. No. 45 at 18; Doc. No. 50 at 18). From a review of Sheriff Fuson's deposition testimony it appears that Defendant hired Mr. Grisham to perform a security analysis of the area where the Commission meetings are held. Sheriff Fuson explained in his deposition testimony that although Mr.

Grisham's analysis did not identify livestreaming as a security threat, these "assessments are really just a general overview" of the security measures already in place, and an assessment may recommend such things as adding more security cameras, or altering the viewpoint of those cameras to make the location more secure. (Doc. No. 41-1 at 80-81). Thus, according to Sheriff Fuson, the focus of the assessment performed by Mr. Grisham is on identifying *potential enhancements in security measures*, as opposed to identifying *security threats* that might counsel in favor of security measures (whether existing or as potentially enhanced). And Plaintiff does nothing to dispute that the assessment that was performed by Mr. Grisham was not intended to identify every specific security threat. Accordingly, the fact that the assessment did not identify livestreaming as a potential security threat does not necessarily mean that it is not actually a security threat.

Additionally, Plaintiffs assert that livestreaming does not pose a risk to safety during the Committee meetings because "[t]he public may only access the building through one entrance on the first floor which is manned by armed guards at a security checkpoint with a metal detector and an x-ray machine. . . ." (Doc. No. 45 at 11). However, Plaintiffs have cited no case law that supports the proposition that the existence of particular security measures already in place somehow diminishes the government's interest in adopting additional security measures to serve its interest in maintaining security. And the Court does not accept this (unsupported) proposition. Indeed, the Court takes judicial notice that this Court's own courthouse has armed guards and metal detectors at the entrance, yet the Court's Local Rules still prohibit "video or audio broadcast." L.R. 83.03(a)(1).[8] Moreover, the government has an interest in controlling even hypothetical (which is to say, "unproven" or "unsubstantiated") security threats. *See McCullen v.*

[8] This local rule does not specifically state that at least one specific purpose for the ban is to promote security, but that purpose is easily inferable.

*Coakley*, 573 U.S. 464 (2014); *see also Reynolds v. Middleton*, 779 F.3d 222, 227 (4th Cir. 2015) ("[W]e generally have not required the government to present evidence to show the existence of a significant governmental interest; common sense and the holdings of prior cases have been found sufficient to establish, for example, that the government has a significant interest in public safety"); *Marcavage v. City of New York*, 689 F.3d 98, 105 (2d Cir. 2012) ("Because security protocols exist to deal with hypothetical risks"—and "security planning is necessarily concerned with managing potential risks, which sometimes necessitates consideration of the worst-case scenario—it is appropriate for governments to consider possible security threats[.]" (internal quotations omitted)); *American Civil Liberties Union of Colo. v. City and Cty. of Denver*, 569 F.Supp.2d 1142, 1175–76 (D. Colo. 2008) ("At its heart, the task of devising a security scheme is inherently a predictive process, requiring planners to make assumptions as to what threats there are, how likely they are to occur, and what harm might result if they do.").

Finally, Plaintiffs assert that since recording is allowed in the Committee meetings, attendees can "surreptitiously" livestream the meetings anyway, meaning (according to Plaintiffs) the Resolution does not actually serve to alleviate any safety issues caused by livestreaming. (Doc. No. 45 at 11). But it is mere speculation that attendees will "surreptitiously" livestream meetings. And even if the Resolution is not followed on some occasions, that does not prevent the Resolution from serving Defendant's interest in safety. Following that logic, any rule that could be broken would potentially be found to not serve the governmental interest for which it was enacted. The Court rejects this argument.

Thus, Plaintiffs have not met their burden (in response to Defendant meeting its burden on summary judgment) to show that there is a disputed issue of material fact as to whether the Resolution serves a significant governmental interest.

In Plaintiffs' Motion, they rely on the same above-described arguments in an attempt to demonstrate that the Resolution undisputedly does not serve a significant government interest. For the reasons described above, the Court finds that Plaintiffs did not meet their burden on summary judgment to demonstrate that the Resolution undisputedly does not serve Defendant's interest in safety of the Commission meetings.

Accordingly, when viewing the undisputed facts in a light most favorable to the non-movant on each of the respective cross-motions, as the Court must do on each of the respective cross-motions, the Court finds that the Resolution serves significant Government interest. In other words, the Court cannot find for purposes of Plaintiffs' Motion that the Resolution indisputably does *not* serve a significant Government interest, but the Court can and does find for purposes of Defendant's Motion that it is undisputed that the Resolution serves a significant Government interest.

ii. *Narrowly Tailored*

Next, the Court must look to whether the Resolution is narrowly tailored to serve the Defendant's significant interest in security during the Commission meetings.

"[T]he requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quotations marks, citation, and alteration omitted). The Supreme Court has emphasized that "when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill v. Colorado*, 530 U.S. 703, 716 (2000). Indeed, a regulation does not violate the First Amendment "'simply because there is some imaginable alternative that might be less burdensome on speech.'"

*Ward*, 491 U.S. at 797. "In all but the most "exceptional case," the requirement of narrow tailoring is satisfied 'so long as the . . . substantial government interest [ ] would be achieved less effectively absent the regulation.'" *Lexington H-L Servs., Inc. v. Lexington-Fayette Urb. Cty. Gov't*, 879 F.3d 224, 229 (6th Cir. 2018) (quoting *McCullen v. Coakley*, 134 S. Ct. 2518, 2535–37 (2014)).[9]

Defendant argues that the Resolution is narrowly tailored because it permits the Plaintiffs to record the meeting to post on social media or elsewhere as soon as the meeting concludes. (Doc. No. 42 at 11).[10] Citing the deposition testimony of Sheriff Fusion, Defendant further argues that "security is less effective without the ban on livestreaming." (*Id*. at 42; see also Doc. No. 49 at 12-13 "[t]he security protocols in place would be less effective without the ban on livestreaming as real time video of the Commission meeting opens up a means of real time communication and intel which can be used to formulate an attack, small or large, on the meeting or individuals in attendance at the meeting."  (citing Doc. No. 41-1 at 19-20, 36-37)).

The Court finds that Defendant thereby has pointed to undisputed facts that reveal that the Resolution is narrowly tailored, even when viewing the undisputed facts in a light most favorable to Plaintiffs. Defendant again points to the deposition testimony of Sheriff Fusion that reveals that Defendant's interest in secure and safe Commission meetings would be achieved less effectively if attendees were able to livestream the meetings in real time, because, as Sheriff Fusion testified in his deposition (which is undisputed by Plaintiffs), livestreaming creates a security threat at Commission meetings by providing immediate and real time information to others regarding the positions of officers, doorways, and security points. (Doc. No. 41-1 at 35, 37, 44-46, 75).

---

[9] The Court notes that, based on this language, the "narrowly tailored" requirement seems to encompass the "alternative channels of communication" requirement. Nevertheless, the Court will follow the case law as laid out by the Supreme Court and Sixth Circuit and analyze these requirements separately, even if this approach seems to engender some redundancy.

[10] This argument is also raised in Defendant's Response at Doc. No. 49 at 12.

Accordingly, Defendant has met its summary judgment burden by pointing to undisputed facts in the record that reveal its "substantial government interest" in security "would be achieved less effectively absent the" Resolution. *Lexington H-L Servs., Inc*., 879 F.3d at 229. Additionally, Defendant has pointed out that the Resolution does not entirely foreclose a means of communication, because Plaintiffs (and others) may record the meetings in the designated recording locations, and then post the records to social media after the meetings have concluded where they and others will be able to "comment" on the video. (Doc. No. 49 at 12); *see Hill*, 530 U.S. at 716 (2000).

In response to Defendant's Motion, and in their Motion, Plaintiffs argue that the Resolution is not narrowly tailored because "alternative security measures would be far more effective at promoting the safety of commission members and attendees [including] locking doors [ ], setting alarms [ ], or placing a single additional guard by the other doors to the building [ ]." (Doc. No. 50 at 18). However, as noted above, the Supreme Court has instructed that a regulation does not violate the First Amendment "'simply because there is some imaginable alternative that might be less burdensome on speech.'" *Ward*, 491 U.S. at 797; *see also A.N.S.W.E.R. Coal. v. Jewell*, 153 F. Supp. 3d 395, 418 (D.D.C. 2016), *aff'd in part sub nom. A.N.S.W.E.R. Coal. (Act Now to Stop War & End Racism) v. Basham*, 845 F.3d 1199 (D.C. Cir. 2017) ("Although ANSWER contends that other less restrictive security measures, such as pre-screening in advance, could permit sign supports without security delays, a regulation does not fail to satisfy intermediate scrutiny simply 'because there are less speech-restrictive alternatives that could have satisfied the Government interest.'" (quoting *Clark*, 468 U.S. at 299). A regulation on speech may be found to be narrowly

tailored, "even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill*, 530 U.S. at 716.[11]

Accordingly, by merely pointing to alternative security measures Defendant could and does take to secure the Commission meetings, Plaintiffs have not met their burden in response to Defendant's summary judgment motion to demonstrate that there are disputed facts as to whether the Resolution is narrowly tailored. Additionally, Plaintiffs have not met their burden on their summary judgment motion to demonstrate that the undisputed facts in the record reveal that the Resolution is not narrowly tailored.[12]

Accordingly, when viewing the undisputed facts in a light most favorable to the non-movant on each of the respective cross-motions, as the Court must do, the Court finds that the Resolution is narrowly tailored to achieve Defendant's significant interest in security of the Commission meetings.

### C. Leave Open Ample Alternative Channels of Communication

The Court next must consider whether the prohibition leaves open ample alternative channels of communication. *See Clark*, 468 U.S. at 293. Any time, place, and manner restriction "must leave open ample alternative channels by which speakers can communicate their messages, although speakers are 'not entitled to their best means of communication.'" *Saieg v. City of Dearborn*, 641 F.3d 727, 740 (6th Cir. 2011) (quotation omitted).

_____

[11] Indeed, as noted above, the Court takes judicial notice that this Court's own courthouse has armed guards and metal detectors at the entrance, and yet the Court's Local Rules nevertheless prohibit "video or audio broadcast." L.R. 83.03(a)(1).

[12] Plaintiffs also argue that the Resolution is not narrowly tailored because it "is over-inclusive" in that it "prohibits all livestream communications, including those containing objectively neutral, factual information." (Doc. No. 50 at 12). This argument actually supports a finding that the Resolution is constitutional, as it shows that the Resolution is content-neutral (as the Court has found above), thus occasioning a lower level of scrutiny than otherwise would exist. Additionally, Plaintiffs' argument is irrelevant because (as is readily apparent from the above-stated test) the inquiry into "narrowly tailored" is not an inquiry into whether the Resolution affects a sufficiently narrow range of subject matter.

In the Memorandum in Support of Defendant's Motion, Defendant argues that there are ample alternative channels for communicating the information that could be expressed through a livestream broadcast. (Doc. No. 42 at 15-23). For example, Defendant asserts that it is undisputed that:

1. Plaintiffs may view and comment on Defendant's YouTube page which broadcasts the Commission meetings with a slight delay (for safety reasons) and preserves the video for an extended period of time for public access. (*Id*. at 16-18).

2. Plaintiffs may use their phones to comment on the proceedings in real time (during the Commission meetings) through their own social media sites without a video of the meeting proceedings. (*Id*.).

3. Plaintiffs are free to record the Commission meetings (from designated areas) and post the recordings on their social media cite after the meeting has concluded wherein Plaintiffs and others may then comment on the videos. (*Id*.).

And indeed these things are undisputed. As indicated by Plaintiffs in their response to Defendant's statement of undisputed facts, (Doc. No. 50), it is undisputed that the Resolution does not preclude anyone at Commission meetings from recording the proceedings as long as such recording occurs in a designated area of chambers with the purpose of preventing certain viewing angles that could pose a security threat. (*Id*. at ¶¶ 9, 15). It is also undisputed that such recordings can be posted online following the conclusion of the meeting. (*Id*. at ¶19). It is also undisputed that the Resolution does not preclude anyone from posting or otherwise commenting on social media or on the internet in general during the Commission meeting (other than preventing a live broadcast of the Commission meeting itself). (*Id*. at ¶ 11). Plaintiffs also do not dispute that the Commission meetings are broadcast by Defendant on YouTube with a slight delay so that it is not

a "live" stream. (*Id.* at ¶ 12). These facts collectively suggest the existence of fulsome alternative channels of communication. Accordingly, the Court finds that Defendant has met its initial burden on Defendant's Motion to demonstrate that ample alternative channels of communication remain available.

In Plaintiffs' Motion and in their response to Defendant's Motion, Plaintiffs argue that the "YouTube channel is not a sufficient alternative channel of communication as compared to a real-time livestream[.]" (Doc. No. 45 at 19; Doc. No. 50 at 18). Plaintiffs assert the YouTube stream is not a sufficient alternative because it operates on a time delay, and gives the moderator of the video the authority to delete comments, thereby allowing Defendant to censor or control the content. (*Id.* at 19-21). Plaintiffs assert that "government-controlled and censored medium cannot provide an adequate alternative for this unique manner of sharing information and spreading of political ideas." (*Id.* at 21). Plaintiffs also point out that the undisputed evidence demonstrates that Plaintiff Knight's livestream of the Commission meetings received more "views" than the Defendant's YouTube stream. (*Id.*).

Consistent with the Court's finding in favor of Defendant immediately above, the Court finds that Plaintiffs have not met their burden (either the burden shifted to them on Defendant's Motion or the initial burden they bear as the movant on Plaintiffs' Motion) to demonstrate that the undisputed facts (even when viewed in their favor) indicate that the Resolution does not leave open ample alternative channels of communication. Although Plaintiffs argue that Defendant has the ability to censor its YouTube broadcast (by (Plaintiffs surmise) deleting comments or deleting portions of the video), Plaintiffs do not dispute that the Resolution does not preclude anyone at the Commission meetings from recording the proceedings (from a designated area) and thereafter posting the recording to Facebook or any other social media platform of their choosing. (Doc. No.

at ¶¶ 9, 15, 19). Additionally, it is also undisputed that the Resolution does not preclude anyone from posting or otherwise commenting on social media or on the Internet in general during the Commission meeting (other than preventing a live broadcast of the Commission meeting itself). (*Id*. at ¶ 11). Plaintiffs may utilize these avenues of communication without any possible interference by Defendant and therefore are not subject to "censoring" by Defendant. Further, although Plaintiff Knight's livestream received more views than Defendant's YouTube broadcast, Plaintiffs are "not entitled to their best means of communication." *Saieg*, 641 F.3d at 740 (internal quotation marks omitted); *see also Ward*, 491 U.S. at 802–03 ("That the city's limitations on volume may reduce to some degree the potential audience for respondent's speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate." (citations omitted)).

Accordingly, when viewing the undisputed facts in a light most favorable to Plaintiffs, the Court finds that they reveal that ample alternative means of communication regarding Commission meetings despite the Resolution's ban on livestreaming such meetings. Alternatively, when viewing the undisputed facts in a light most favorable to Defendant (as the Court must do on Plaintiff's Motion), the Court obviously finds likewise.

### D. The Resolution is a Reasonable Time, Place, and Manner Restriction

In conclusion, the Court finds that the Resolution is a constitutionally permissible time, place and manner restriction because the undisputed facts reveal that the Resolution is content-neutral, narrowly tailored to serve a significant governmental interest, and leave[s] open ample alternative channels for communication of the information, even when viewing the facts most favorably to Plaintiffs (and, obviously, also to Defendant). *See Lowery*, 586 F.3d at 432.

Accordingly, the Court will grant Defendant summary judgment on Plaintiffs' First Amendment claim and will deny Plaintiffs' summary judgment on their First Amendment claim.

### E. Plaintiffs' (Apparent) Additional Theories of a First Amendment Violation

Throughout Plaintiffs' Motion for Summary Judgment, Memorandum in Support thereof, and Response to Defendant's Motion, Plaintiffs spend a great deal of time describing general concepts of First Amendment jurisprudence that simply do not apply to the claim Plaintiffs alleged in the Second Amended Complaint. For example, when arguing that the Resolution is not "narrowly tailored," Plaintiffs regurgitate case law regarding First Amendment theories of overbreadth,[13] right-of-access,[14] and prior restraint.[15] First Amendment claims based on these theories are simply not pled in Plaintiffs' Second Amended Complaint, and Plaintiffs have not moved to amend the Second Amended Complaint. *See Bridgeport Music, Inc. v. WM Music Cor*p., 508 F.3d 394, 400 (6th Cir. 2007) (explaining that a plaintiff may not expand his claims to assert new theories for the first time at the summary-judgment stage); *see Tucker v. Union of Needletrades, Indus. & Textile Emps*., 407 F.3d 784, 788 (6th Cir. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).") (citation omitted)).

---

[13] As discussed in an above footnote, even if Plaintiffs had asserted an overbreadth claim, it would fail for the same reasons that their as-applied challenge fails.

[14] Indeed, in Plaintiffs' response to Defendant's motion to dismiss, Plaintiffs specifically disclaimed that they were asserting a right-of-access claim, asserting that their First Amendment Claim was based on "the right of expression" and "not access." (Doc. No. 20 at 6).

[15] Theories based on prior restraint do not apply in this case, because "[a] 'prior restraint' exists when speech is conditioned upon the prior approval of public officials." *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000). Here, the Resolution does not contemplate prior approval by public officials as a condition on the right to engage in speech; the issues here involve officials *banning* something—livestreaming—rather than *requiring prior approval of* something. as would be the case with a licensing or permitting scheme.

Moreover, case law involving these theories is simply not relevant to the analysis of whether the Resolution is a constitutionally permissible time, place, and manner restriction. Therefore, insofar as Plaintiffs cite First Amendment case law involving theories (without developed argument) that are not pertinent to Plaintiffs' First Amendment claim as pled, those citations do not suffice to raise new additional theories of a First Amendment claim.

Additionally, at times throughout Plaintiffs' briefing, it appears as if Plaintiffs confuse their constitutional attack on the Resolution with a constitutional attack on the County's maintenance of its YouTube channel, specifically, the County's prerogative to "censor" the comments on that channel. However, such discussion is irrelevant, as Plaintiffs have not pled a constitutional claim specifically attacking the County's maintenance or operation of its YouTube page. As Defendant aptly explained:

> To the extent the Plaintiffs may be asserting Montgomery County's YouTube channel should itself satisfy the forum analysis, such is not pled in this case and is not necessary. While the Plaintiffs argue Montgomery County's YouTube page is not an ample alternative channel to communicate their views, they have not pled that the YouTube channel itself is constitutionally invalid under the First Amendment. Therefore, discussion as to whether the YouTube channel is a prior restraint on speech is at best only relevant to whether the channel is an ample alternative channel of communication. Because the YouTube channel is not the sole method of communication available to the Plaintiffs, such a forum analysis related solely to the YouTube channel is unnecessary and not properly pled before this Court which seeks only a declaration regarding Section 7 of Resolution 19-8-3. (Plaintiffs' Second Amended Complaint, p. 11, Doc. No. 32).

(Doc. No. 49 at 18 n.7). To the extent that Plaintiffs are arguing that the YouTube channel is a prior restraint on speech, that argument is simply irrelevant to the Court's analysis as to whether the Resolution is a reasonable time, place, and manner restriction, and that argument will be disregarded.

## II. **Count Two: Violation of Article I, Section 19 of the Tennessee Constitution**

Plaintiffs seek a declaratory judgment that the Resolution violates Article I, Section 19 of the Tennessee Constitution.[16] The First Amendment to the United States Constitution prohibits any law "abridging the freedom of speech," U.S. Const. amend. I, while the Tennessee Constitution acknowledges that "[t]he free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty." Tenn. Const. art. I, § 19.

Defendant argues in its Motion that the undisputed facts reveal that Defendant is entitled to summary judgment on Plaintiffs' claim brought under the Tennessee constitution for the same reasons it is entitled to summary judgment on Plaintiffs' claim brought under the federal constitution. Defendant contends that the "[a]nalysis under both the First Amendment to the U.S. Constitution and Article I, Section 9 of the Tennessee Constitution as it relates to speech and expression is the same." (Doc. No. 42 at 6) (citing *Lamar Tenn., LLC, v. City of Knoxville*, 2016 Tenn. App. LEXIS 142, * 39-40 (Tenn. Ct. App. Feb. 25, 2016)).

Article I, Section 19 of the Tennessee Constitution has been "construed" by the Tennessee Supreme Court "'to have a scope at least as broad as that afforded' the freedoms of speech and of the press by the First Amendment." *State v. Mitchell*, 343 S.W.3d 381, 392 n.3 (Tenn. 2011) (quoting *Leech v. Am. Booksellers Assoc.*, 582 S.W.2d 738, 745 (Tenn. 1979)); *see also Doe v. Doe*, 127 S.W.3d 728, 732 (Tenn. 2004); *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 525 (Tenn. 1993) (indicating that the Tennessee Supreme Court "may interpret Article I, § 19

---

[16] Plaintiffs do not also seek damages under this theory. And indeed there is no private right of action for damages grounded directly upon a violation of the Tennessee Constitution. *See Siler v. Scott*, 591 S.W.3d 84, 102 (Tenn. Ct. App. 2019); *Cline v. Rogers*, 87 F.3d 176, 179–80 (6th Cir. 1996); *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999).

of the State Constitution as providing greater freedom of expression than that provided in the Federal Constitution."). However, while recognizing that the Tennessee Constitution likely provides great protections for speech, the Tennessee Supreme Court has yet to "recogniz[e] [ ] a substantial difference in protection of speech" from the First Amendment. *Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1, 13 (Tenn. 2000) (noting that the Tennessee Constitution likely provides broader protections for speech than the federal constitution, but explaining that "[a]s in *Leech* and *Marshall*, we find it unnecessary for the resolution of the issues before the Court in this case to further specifically define the boundaries of protection of Article I, § 19 of the Tennessee Constitution[.]").

As Judge Trauger of this Court recently explained, the Tennessee Supreme Court's reservation of the right to one day interpret the Tennessee Constitution as providing broader protections for speech is, "of course, [ ] in keeping with the Tennessee Supreme Court's 'authority as the 'court of last resort' in interpreting the Constitution of Tennessee.'" *Venable v. Metro. Gov't of Nashville*, 430 F. Supp. 3d 350, 361 (M.D. Tenn. 2019) (granting summary judgment as to the plaintiff's claim brought for violation of the Tennessee constitution based upon the same reasons articulated in the court's First Amendment analysis, because the plaintiff had not shown any reason Tennessee courts would depart from the First Amendment *Pickering* balance test when analyzing the Tennessee Constitutional claim for violation of the same conduct (quoting *State v. Marshall*, 859 S.W.2d 289 (Tenn. 1993))). However, as Judge Trauger also explained, "[t]his Court's role is different. It is required to apply the law as written or already interpreted, and, in the case of unsettled law, to predict how the state's highest court would rule were it presented with the issue." *Id*. (citing *Katz v. Fid. Nat. Title Ins. Co.*, 685 F.3d 588, 596 (6th Cir. 2012)).

As the state of the law currently stands, the Tennessee Supreme Court has yet to "define the boundaries of protection of Article I, § 19 of the Tennessee Constitution," *Planned Parenthood*, 38 S.W.3d at 13, and Tennessee courts look to First Amendment principles when determining whether a restriction on speech is violative of Article I, Section19 of the Tennessee Constitution. *See Lamar Tenn., LLC v. City of Knoxville*, E2014–02055–COA–R3–CV, 2016 WL 746503 (Tenn. Ct. App. Feb. 25, 2016) (applying First Amendment principles when determining whether a regulation was an unconstitutional restriction of speech in violation Article I, Section 19 of the Tennessee Constitution); *City of Cleveland v. Wade*, 206 S.W.3d 51 (Tenn. Ct. App. 2006) (same); *Silver Video USA, Inc. v. Summers*, No. M2004-00794-COA-R3CV, 2006 WL 3114220, at *14 (Tenn. Ct. App. Nov. 1, 2006) (same); *Am. Show Bar Series, Inc. v. Sullivan Cty.*, 30 S.W.3d 324, 333 (Tenn. Ct. App. 2000) (same); *WRG Enterprises, Inc. v. Crowell*, 758 S.W.2d 214, 217 (Tenn. 1988) (finding that Tennessee statute was an impermissible time, place, and manner speech regulation based on First Amendment principles and therefore violative of Article I, §§ 8 and 19 of the Tennessee Constitution); *H & L Messengers, Inc. v. City of Brentwood*, 577 S.W.2d 444, 453 (Tenn. 1979) (combining the discussion of whether an ordinance violated the First Amendment with a discussion of whether it violated Article I Section 19 of the Tennessee Constitution). Further, "[g]enerally, '[the Tennessee Supreme Court] will not interpret a state constitutional provision differently than a similar federal constitutional provision unless there are sufficient textual or historical differences, or other grounds for doing so.'" *State v. Pruitt*, 510 S.W.3d 398, 415 (Tenn. 2016) (quoting *Phillips v. Montgomery Cty.*, 442 S.W.3d 233, 243 (Tenn. 2014)).

Accordingly, for the same reasons articulated above when discussing Plaintiffs' federal constitution claim, Defendant has met its burden on summary judgment to demonstrate the

undisputed facts reveal that the Resolution is content-neutral, narrowly tailored to serve a significant governmental interest, and leaves open ample alternative channels for communication. Therefore, Defendant has met its summary judgment burden to demonstrate that the undisputed facts show the Resolution is not violative of Article I, § 19 of the Tennessee Constitution. In response, Plaintiffs have not met their burden to demonstrate the existence of disputed facts in this regard. And for the same reasons articulated above, Plaintiffs have not met their burden on their summary judgment motion to demonstrate that the undisputed facts reveal that the Resolution *is* violative of Article I, § 19 of the Tennessee Constitution.

Accordingly, Defendant's Motion will be granted as to Plaintiffs' claim brought for alleged violations of Article I, § 19 of the Tennessee Constitution, and Plaintiffs' Motion will be denied.

### III. Plaintiff Knight's Standing

Finally, Defendant argues that Plaintiff Knight does not have standing to assert his claims against Defendant because he voted in favor of the Resolution. (Doc. No. 42 at 23-24).

"For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue." *Memphis A. Phillip Randolph Inst. v. Hargett*, 485 F. Supp. 3d 959, 976 (M.D. Tenn. 2020) (Richardson, J.) (citation and internal quotation marks omitted). "When one party has standing to bring a claim, the identical claims brought by other parties to the same lawsuit are justiciable." *Id.* (citing *Northeast Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 623 (6th Cir. 2016)). Thus, in a multiple-plaintiff case, a court need not consider the standing of other plaintiffs once one plaintiff is determined to have standing. *Id.*

Defendant has not challenged the standing of the other Plaintiffs in this action. And even if he had (and assuming Plaintiff Knight did not have standing to bring the claims), standing exists for the other Plaintiffs because it is undisputed that the Resolution clearly prevents Plaintiffs from

livestreaming during the Commission meetings. *See Phillips v. DeWine*, 841 F.3d 405, 415 (6th Cir. 2016) ("To establish standing for a free-speech claim, the Plaintiffs generally must show that 'the rule, policy or law in question has explicitly prohibited or proscribed conduct on the[ir] part." (citing *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 711 (6th Cir. 2015))). So even if Defendant were correct that Plaintiff Knight in particular lacked standing, that would not deprive this Court of authority to hear the case, because Defendant has not challenged the other Plaintiffs' standing to assert the claims. Accordingly, the Court need not review Defendant's argument that Plaintiff Knight is without standing to bring his claim.[17]

## CONCLUSION

Accordingly, for the reasons articulated above, Defendant has met its burden on summary judgment to demonstrate the undisputed facts reveal that the Resolution is content-neutral, narrowly tailored to serve a significant governmental interest, and leaves open ample alternative channels for communication of the information, and therefore not violative of the First Amendment of the United States Constitution or Article I, § 19 of the Tennessee Constitution. In response, Plaintiffs have not met their burden to demonstrate the existence of disputed facts in this regard.

On Plaintiffs' Motion, for the same reasons articulated above, Plaintiffs have not met their burden to demonstrate that the undisputed facts reveal that the Resolution is violative of the First Amendment of the United States Constitution or Article I, §§ 8 and 19 of the Tennessee Constitution.

---

[17] The Court notes that it is just as well for Defendant that it did not succeed with a standing argument. The upshot of such success would be that the Court would lack subject-matter jurisdiction and thus would be required to dismiss the Second Amended Complaint without prejudice. Instead, the Court herein has resolved Plaintiffs' claims in Defendant's favor on the merits.

Therefore, Defendant's Motion (Doc. No. 40) will be GRANTED, and Plaintiffs' Motion (Doc. No. 44) will be DENIED. Summary Judgment will be granted to Defendant on both of Plaintiffs' claims.

An appropriate order will be entered.


_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE